## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DANIEL LEE ADAMS,

    Plaintiff,

    v.

T.S. STEWART,
F. HERSHBERGER,
S. SHEETZ,
A. EDMONDS,
SOLOMON HERJIRKA,
DIRECTOR OF VOLUNTEERS OF
    AMERICA, INC.,

    Defendants.

Civil Action No.:  ELH-18-3420

## MEMORANDUM OPINION

Daniel Adams, the self-represented plaintiff, is a former federal inmate.  He filed a civil rights suit under 42 U.S.C. § 1983 against a host of defendants (ECF 1), along with an exhibit.  He subsequently supplemented the suit.  ECF 7.  Adams was incarcerated at Federal Correctional Institution—Cumberland ("FCI-Cumberland") until January 23, 2019.  The suit concerns his brief transfer to the Volunteers of America ("VOA") in Baltimore in June 2018.

The "BOP Defendants" filed a 24-page "Answer To Complaint" ("Answer").   ECF 21.[1] They argue, for various reasons, that the Complaint is subject to dismissal.[2]  The Answer is

---

[1] Counsel for the "BOP Defendants" did not name the defendants for whom the Answer was filed.  It appears that Solomon Hejirika, the Director of the VOA, was served.  ECF 13.  But, it is not likely that he is a "BOP Defendant."  And, he did not respond to the suit.

[2] Curiously, defense counsel did not move to dismiss, despite urging dismissal of the suit. Presumably, defense counsel inadvertently labeled the submission as an Answer, rather than a motion to dismiss or, in the alternative, for summary judgment.

supported by several exhibits.  In defendants' conclusion, they expressly seek dismissal of all claims.  ECF 21 at 24.

Notably, plaintiff was advised by the Court that defendants Edmonds, Hershberger, Sheetz, and Stewart had moved to dismiss or for summary judgment.  ECF 22.  And, he was advised of his right to respond.  *Id.*  Thereafter, plaintiff filed two submissions (ECF 24, ECF 25), and he also submitted portions of his medical records.  ECF 25-1.

Given the content of the Answer, including the request for dismissal of the suit, coupled with the notice to plaintiff and his responses, I shall construe the Answer as a motion to dismiss ("Motion").  No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, I shall grant the Motion.

## I.     Background

Adams was transferred from F.C.I.-Cumberland to Volunteers of America on June 6, 2018.  ECF 1 at 4; ECF 7 at 3.  Just two days earlier, on June 4, 2018, plaintiff was seen by Dr. Sheetz.  ECF 1 at 5.[3]  Adams claims that he spoke with Dr. Sheetz about "having enough meds to hold [him] over for the first 30 days of [his] release."  *Id*.  Dr. Sheetz assured Adams that an order had been placed for his medication, covering a period of 30 days.  ECF 1 at 5; ECF 7 at 6.  Unfortunately, when Adams was transferred from FCI-Cumberland to the VOA in Baltimore, "[his] mental health meds was [sic] not a part of [his] transfer as they should have been."  ECF 1 at 4; *see* ECF 7 at 3.

According to Adams, on July 5, 2018, Solomon Herjirka, the Director of VOA, required "Mr. Barnes" to call Adams into his office, where he was told that he should not be at the halfway house due to his mental illness.  ECF 1 at 6; ECF 7 at 1-2.  Mr. Herjirka came to the office with

---

[3] Shane Sheetz is a psychologist at FCI-Cumberland.  ECF 21-3 (Sheetz Declaration), ¶ 1.

five United States Marshals and Adams was informed he was being transferred back to FCI-Cumberland, despite the fact that he had not violated any VOA rules and he had completed the RDAP Program.  ECF 1 at 6; ECF 7 at 2.

Adams states that on July 9, 2018, he tried to speak with Warden Timothy Stewart about his return from the halfway house, but Warden Stewart ignored Adams "for 2 months."  ECF 7 at 5.  When he did speak to Stewart, Adams states that all he would tell him was that he would be released on January 3, 2019.  *Id.*  Adams alleges that Stewart told him he was not getting out before that date, laughed, and remarked that he would "support what [his] staff say[s]."  *Id*.

According to Adams, on September 8, 2018, he spoke with Ms. A. Edmonds, R.N., and Assistant Warden M. Starr, who came to the suicide cell where Adams was confined to speak with him.  ECF 7 at 3.  Adams states that a nurse from Johns Hopkins Hospital[4] called FCI-Cumberland to ask what kind of medications Adams had been prescribed, and Edmonds told the Johns Hopkins nurse.  *Id*.  Further, Adams claims that Edmonds reported that the nurse from Johns Hopkins questioned why Adams had not received his medication when he was released from FCI—Cumberland, and Edmonds responded that they "forgot" because "we are dealing with over 9 hundred inmates."  *Id*.

Adams alleges that on September 10, 2018, Frank Hershberger, the head of "psy" at FCI Cumberland, came to the suicide cell and told Adams if he would "stop playing your games and take your meds you would not be in this cell."  ECF 7 at 4.[5]  Dr. Hershberger told Adams that he had been told by Dr. Sheetz that Adams had been given "enough meds to hold [him] for 30 days"

---

[4] Adams does not explain when or why he was at Johns Hopkins Hospital.

[5] In Dr. Hershberger's Declaration (ECF 21-5), he states that he is the Chief Psychologist at FCI-Cumberland.  *Id.* ¶ 1.

when he was released to the halfway house.  *Id*.  According to Adams, Dr. Hershberger then advised, *id*.:

> Here's what I am doing, I am going to take you off suicide watch and place you
> back in general population and know that you will be with us [un]til you are
> released on 01-03-19 then you can play your games as long as you want to on
> the streets Adams.  I will not have to deal with your bull-shit anymore.

Based on these allegations, Adams seeks damages in the amount of ten million dollars for "unlawful incarceration and pain and suffering."  ECF 1 at 4.

Adams filed suit before he was released from incarceration.  To the extent that Adams seeks a transfer back to the VOA halfway house, the relief is no longer available due to plaintiff's release from incarceration.  *See* ECF 14 (Adams's notice of change of address); *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Rd's Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pretrial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief).

## II.    Standard of Review

Adams filed suit in forma pauperis, pursuant to 28 U.S.C. § 1915(a)(1), which permits an indigent litigant to commence an action in this court without prepaying the filing fee.  To guard against possible abuses of this privilege, however, the statute requires dismissal of any claim that is frivolous or malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under 28 U.S.C. § 1915(e)(2) a case shall be dismissed at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief.

This court is mindful of its obligation to construe liberally the pleadings filed by a self-represented litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *White v. White,* 886 F. 2d 721, 722-723 (4th Cir. 1989). In evaluating such a complaint, the factual allegations are assumed to be true. *Id*. at 93 (citing *Bell Atlantic Corp*. *v. Twombly*, 550 U.S. 544, 555–56 (2007)). Nonetheless, liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs*., 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating that a district court may not "conjure up questions never squarely presented"), *cert. denied*, 475 U.S. 1088 (1986); *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Coulibaly v. J.P. Morgan Chase Bank, N.A*., DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller*, 901 F.2d at 391. Therefore, the court cannot fashion claims for a plaintiff because he is self-represented. *Beaudett* , 775 F.2d at 1278; *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint). As the Fourth Circuit has said: "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court

from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278.

What the Fourth Circuit stated in *Harris v. Angliker*, 955 F.2d 41, 1992 WL 21375, at *1 (4th Cir. 1992) (per curiam) (unpublished), is also apt:

> It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir.), cert. denied, 382 U.S. 966, 86 S. Ct. 458, 15 L.Ed.2d 370 (1965); *Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981). District courts are not required to be mind readers, or to conjure questions not squarely presented to them. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088, 106 S. Ct. 1475, 89 L.Ed.2d 729 (1986).

The Supreme Court has explained that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Nonetheless, a complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. But, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Ordinarily, in regard to a motion to dismiss, courts do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Therefore, the court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the

complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. And, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c)

("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

### III.  Discussion

#### A.  Defendants Edmunds and Hershberger

Defendant Alisha Edmunds is the Chief Pharmacist at FCI-Cumberland.  ECF 21-2 (Edmunds Declaration), ¶ 1.  Defendant Frank Hershberger is the Chief Psychologist at FCI—Cumberland.  ECF 21-5, ¶ 1.  Both are officers in the Public Health Service ("PHS").  ECF 21-2, ¶ 2; ECF 21-5, ¶ 2.  Dr. Edmunds was commissioned in the PHS as of January 27, 2014, and continues to be a commissioned officer.  ECF 21-2, ¶ 2.  Dr. Hershberger was commissioned as an officer in the PHS as of June 9, 1997.  ECF 21-5, ¶ 2.

The status of Edmunds and Hershberger as PHS officers is subject to judicial notice by virtue of public records establishing that the Commissioned Corps of the U.S. Public Health

Service provides medical services to Bureau of Prisons facilities.[6]  *See Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006) (noting that it is permissible to take judicial notice of a general proposition, but it is not permissible to make an inference without additional evidence); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (noting that court is not required to accept allegations that contradict matters subject to judicial notice); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979) (a court may properly look beyond the complaint to matters of public record and do so without converting a Rule 12(b)(6) motion to one for summary judgment).

The Public Service Act provides, 42 U.S.C. § 233(a):

> The remedy against the United States provided by [the Federal Tort Claims Act] … for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions…by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding….

Adams's Complaint was filed on pre-printed forms for use in filing a civil rights complaint pursuant to 42 U.S.C. § 1983 and has been construed as one filed pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (establishing cause of action against federal agents for alleged violations of constitutional rights).  The Supreme Court ruled in *Hui v. Castaneda*, 559 U.S. 799 (2010), that PHS officers are absolutely immune from a *Bivens* claim because 42 U.S.C. § 233(a) "grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct."  *Id*. at 806.  Rather, the Federal Tort Claims Act is the exclusive remedy.[7]

---

[6]    *See*    https://usphs.gov/newsroom/features/action/bop-highlights.aspx    ("The Commissioned Corps and the Federal Bureau of Prisons: Partners in Public Health Since 1930").

[7]  Under the FTCA, the United States is liable, as a private person, for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any

Adams has not availed himself of the only available remedy by which he may pursue his claims against Edmunds and Hershberger.  As PHS Officers, Edmunds and Hershberger are immune from Adams's *Bivens* claim, thereby requiring dismissal of the Complaint against them.

### B.    Warden Stewart

The only claim raised against Stewart concerns his alleged insensitivity regarding Adams's dissatisfaction with having been sent back from the VOA to FCI-Cumberland.  ECF 7 at 5. Specifically, Adams asserts that Stewart ignored his requests to talk to him for two months and when he did speak with Adams he remarked that Adams would continue to be incarcerated at FCI-Cumberland until his January 2019 release date.  *Id*.  There is no allegation that Stewart played a role in the decision to send Adams back to FCI-Cumberland or that he interfered with any prescribed psychiatric treatment Adams was supposed to receive.

Liability of supervisory officials, such as Warden Stewart, "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability in a *Bivens* claim must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the

---

employee of the Government while acting under the scope of his office or employment." 28 U.S.C. § 1346(b) (1994).  A plaintiff must exhaust administrative remedies under the FTCA before filing suit.  28 U.S.C. § 2671.  Presentation of the claim to the appropriate agency is jurisdictional. *Kokotis v. United States Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000).  But, the limitations period is not jurisdictional.  *See Raplee v. United States*, 842 F.3d 328, 335 (4th Cir. 2016) (stating that the FTCA's "limitations period is not a jurisdictional rule but a claims-processing one") (citing *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015)).

supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit).

A review of Adams's Complaint, as supplemented, as well as his correspondence (ECF 25), establishes that there is no cognizable basis for Adams's claim against Warden Stewart. Rather, it appears that Adams named Warden Stewart as a defendant simply because he is the warden at FCI-Cumberland. This approach is what is prohibited by the well established law outlined above. To the extent that Adams's claim against Warden Stewart is based in whole or in part on the statements made to Adams regarding his confinement at FCI-Cumberland, hurtful words alone are insufficient to state a constitutional claim. *See Pink v. Lester*, 52 F.3d 73, 75 (1995) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)) (no constitutional claim for undesirable behavior that does not also implicate a constitutional right).

### C.      Solomon Hejirka

Plaintiff alleges in his suit that Hejirka is the Director of the VOA and it was at Hejirka's behest that Mr. Barnes called Adams into his office to tell him he was being removed due to his mental illness. ECF 7 at 1-2. He also claims that Mr. Herjirka came into the office accompanied by five United States Marshals and informed Adams that he was being transferred back to FCI-Cumberland. *Id*. The allegations against this defendant simply do not state a claim.

Adams has no constitutional right to early release or participation in rehabilitation programs. *See Moody v. Daggett*, 429 U.S. 78, 88, n. 9 (1976); *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1,7 (1979). Nor does Adams have a constitutional right to

demand service of his sentence in one facility rather than another. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); s*ee also Sandin v. Conner*, 515 U.S. 472, 493 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest).

To the extent Adams alleges an Eighth Amendment claim for inadequate medical care, the claim fails, for the reasons set forth below.

### D.     Eighth Amendment claim

The Eighth Amendment protects the rights of convicted prisoners. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) ("'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'") (quoting *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977)).  It prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  And, "[i]t is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. Sept. 4, 2019) (citation omitted).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failure to protect inmates from attack, inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson*, 501 U.S. at 303; *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017). Moreover, "[t]he necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor,* 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38); *see Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

For a plaintiff prisoner to prevail in a suit alleging the denial of adequate medical care, the defendant's actions or inaction must amount to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Lightsey*, 775 F.3d at 178; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228.

Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the defendant was aware

14

of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer*, 511 U.S. at 837; *see also Gordon*, 937 F.3d at 357; *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *King*, 825 F.3d at 219. As the *Heyer* Court put it, "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer*, 849 F.3d at 209-10.

The subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. As the *Farmer* Court explained, 511 U.S. at 837, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Put another way, "it is not enough that the defendant *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*); *see Farmer*, 511 U.S. at 839-40; *Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017).

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young v. City of*

*Mount Ranier,* 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge.  And, the plaintiff can rely on circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842); *see also Gordon,* 937 F.3d at 357; *Scinto*, 841 F.3d at 225.

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury.  Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial *risk* of serious harm.'" *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98.  But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014); *see De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).[8]

The Supreme Court recognized in *Farmer* that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." 511 U.S. at 844; *accord Brown*, 240 F.3d at 390-91.  The Constitution requires prison officials to ensure "reasonable safety," a standard that acknowledges prison officials' "unenviable task of keeping [sometimes]

_____

[8] The Supreme Court has rejected the "significant injury" requirement in regard to an excessive force claim under the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam); *see Danser*, 772 F.3d at 346 n.8 (distinguishing deliberate indifference claims).

dangerous [people] in safe custody under humane conditions[.]" *Farmer*, 511 U.S. at 845 (citations and quotation marks omitted). Accordingly, "prison officials who act reasonably cannot be found liable" under the deliberate indifference standard. *Id.*; *see also Short v. Smoot*, 436 F.3d 422, 428 (4th Cir. 2006) (finding that an officer who responds reasonably to a danger facing an inmate is not liable under the deliberate indifference standard, even when further precautions could have been taken but were not); *Brown*, 240 F.3d at 390-91.

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see also Scinto*, 841 F.3d at 225; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). In *Estelle*, 429 U.S. at 106, the Supreme Court said: "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."

What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), *cert. denied,* 529 U.S. 1067 (2000), is also pertinent: "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . ." *See also Young*, 238 F.3d at 576 (stating that a Fourteenth Amendment deliberate inference claim requires more than a showing of "mere negligence"); *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998) ("[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference."). Although the deliberate indifference standard "'entails more than mere negligence

17

. . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835).

Of course, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice*, 58 F.3d at 105. But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012); *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at * 2 (D. Md. June 3, 2012); *Robinson v. W . Md. Health Sys. Corp.*, DKC-10-3223, 2011 WL 2713462, at *4 (D. Md. July 8, 2011). And, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

At issue here is Adams's claim that he arrived at the halfway house without his medication. But, he does not specifically claim any of the named defendants purposely or recklessly failed to insure he had an adequate supply of medication with him when he was released to the halfway house. ECF 1; ECF 7. Rather, Adams "acknowledges" he did not have the required medication with him when he left FCI-Cumberland, without stating who was responsible for the oversight. ECF 1 at 4; ECF 7 at 3. Further, Adams states that Dr. Sheetz told him he had taken measures to ensure Adams had enough medication for the first 30 days after his release. ECF 1 at 5; ECF 7 at 6.

To the extent that reassurance was not true, Adams raises no allegation indicating there was an intent to deny him the medication he required to treat his mental health issues.  Thus, the Eighth Amendment claim must also be dismissed.

### IV.   Conclusion

For the reasons stated herein, the Complaint shall be dismissed, pursuant to 28 U.S.C. § 1915(e), for failure to state a claim.  A separate Order follows.


May 28, 2020_____                    _____/s/_____
Date                                                      Ellen L. Hollander
                                                             United States District Judge